UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JESSICA ARISTIZABAL,
               Plaintiff,

         - against -

COMMISSIONER MICHAEL J. ASTRUE,
Social Security Administration,

               Defendant.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

08 Civ. 4135 (BMC)

**COGAN**, District Judge.

    Plaintiff challenges defendant's denial of her application for Supplemental Security Income ("SSI"). The crux of plaintiff's argument is that her limited intellectual functioning entitles her to disability benefits.

    Based on her learning and depressive disorders, plaintiff received disability benefits until her 18th birthday.[1] Plaintiff was enrolled in special education classes throughout her academic career, which ended when, after being held back in fourth or fifth grade and repeating ninth grades several times, she dropped out of high school at 17.[2] Plaintiff then took classes towards an equivalency degree, which she never attained. Plaintiff has also attempted to work. For one two month period, she held a job stocking clothing and retrieving items in specific sizes for customers.

    The key question before me is whether there was substantial evidence in the record to support the Administrative Law Judge's ("ALJ") determination that plaintiff is not sufficiently

---

[1] At 10-years-old, plaintiff was awarded SSI disability benefits because she had a full scale IQ of 73, a verbal IQ of 60, and a performance IQ of 90

[2] Plaintiff testified that she thought she had repeated ninth grade three times. She left school virtually illiterate. As she testified in 2001, "I can't read that well like other kids my age" and could not even seek part-time work because she could not read or write well enough to fill out a job application.

intellectually impaired so as to be classified as disabled. I must determine whether the evidence in support of the ALJ's decision was "more than a mere scintilla," and such that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 389 (1971). In light of the non-adversarial nature of a benefits proceeding, where there is a gap in the record, the ALJ must affirmatively develop evidence to fill it. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). This duty exists whether or not plaintiff is represented by counsel. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). Although it is the claimant's obligation to prove her disability and provide all relevant medical evidence, "[i]f the evidence does not give the ALJ 'sufficient medical evidence about [the claimant's] impairment to determine whether [the claimant is] disabled,' a consultative exam may be ordered, at SSA's expense." Firpo v. Chater, 100 F.3d 943 (2d Cir. 1996) (quoting 20 C.F.R. §404.1517) (finding that the ALJ was not obliged to order a second consultative examination where evidence from the first consultative exam was consistent with laboratory tests and conclusions of claimant's own doctors); see also Burger v. Astrue, 282 Fed. App'x. 883, 884 (2d Cir. 2008) (remanding for additional medical assessment where there was no treating physician and ALJ found claimant "only somewhat credible"); Pettey v. Astrue, 582 F. Supp. 2d 434 (W.D.N.Y. 2008) (remanding for further development of the record, which lacked records from treating physicians, residual functional capacity reports, and records from two year period between application and hearing date).

Based on the administrative record before me, I believe that the ALJ based his decision on a record with a significant gap. Although the ALJ did arrange a consultative examination, the limited scope of the examination was to interpret prior tests that are arguably too old or of limited applicability – all of the testing was done more than ten years before the hearing of this matter, when plaintiff was 15-years-old. There is no reason for such a limited review. A full

battery of evaluative tests can be performed that will produce a current basis for determining whether plaintiff is mentally disabled.

The ALJ concluded that plaintiff was not mentally retarded because she did not have a substandard IQ, but the record is devoid of any current verbal, performance, or full-scale IQ test.[3] The ALJ was unduly and unnecessarily speculating when he determined that plaintiff did not suffer from sub-standard intellectual functioning, reaching broad conclusions on a record devoid of conclusive IQ test results. Specifically, the ALJ relied on a 1998 TONI-2 Nonverbal Intellectual test score and disregarded the results of plaintiff's score on several subtests of the Wechsler Intelligence Scale for Children-III (WISC-III), which she took at the same time as the TONI-2 and indicated that she was mentally deficient. Dr. Robin Bryant, the state psychologist who administered both tests, noted that plaintiff's TONI-2 score appeared to only represent her nonverbal reasoning ability and was inconsistent with her WISC-III subtest scores, which indicated that plaintiff was mentally deficient on any task requiring verbalization, auditory processing or performance tasks.[4]

The TONI-2 nonverbal test does not constitute a valid IQ, but it may be used as a substitute in "special circumstances," such as when a claimant is not fluent in English. See C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 12.00(D)(6)(d) ("Generally, it is preferable to use IQ measures that are wide in scope and include items that test both verbal and performance abilities.

---

[3] This is not to say that old IQ tests are necessarily inaccurate. According to the Commissioner's regulations, "IQ tests tend to stabilize by the age of 16. Therefore, IQ tests obtained at age 16 or older should be viewed as a valid indication of the child's current status." 20 C.F.R. Pt. 404, Subpt. P, App. 2, 112.00(D)(10). Test results from 7 to 16, on the other hand, are only considered current for two years. Id. The most recent IQ results available here are from when plaintiff was 10-years-old. The most recent intelligence tests were administered when plaintiff was 15-years-old.

[4] Taking into account plaintiff's IQ of 91 and WISC-III scores, Dr. Bryant found that plaintiff's personal and social skills were moderately to seriously impaired. Combined with her severe learning disabilities, Dr. Bryant's report noted that plaintiff's impaired personal and social skills could bring her overall intellectual functioning down to a borderline range, if not even lower, and her impairments may be permanent.

3

However, in special circumstances, such as the assessment of individuals ... whose culture and background are not principally English-speaking, measures such as the Test of Nonverbal Intelligence ... may be used"). Such circumstances are not present here. Plaintiff is bilingual because her parents spoke Spanish in the home while she was growing up, but she was born and raised in New York City and speaks fluent English on a daily basis.

Here, the ALJ weighted the intelligence test that supported his conclusion and dismissed the one that did not. Although the WISC-III subtest scores could not be substituted for a valid verbal IQ, it was improper to dismiss them and give the TONI-2 scores controlling weight, especially because Dr. Bryant noted that the scores were inconsistent and the TONI-2 score represented only plaintiff's nonverbal reasoning ability.

Given the discrepancy between plaintiff's WISC-III and TONI-2 scores, both of which are more than a decade old and taken before her IQ stabilized, I cannot find substantial evidence in this record to support the ALJ's decision because the record is incomplete. The case is remanded to the Commissioner for further proceedings. On remand, the Commissioner is directed to have plaintiff take a full panoply of such IQ tests as are deemed warranted by a psychologist or psychiatrist who specializes in the diagnosis and evaluation of mental retardation.

**SO ORDERED.**

s/Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
December 7, 2009